UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

WILLIAM KLEINFELDT,

          Plaintiff,

    v.

THE CITY OF NEW YORK, NEW YORK
CITY POLICE DEPARTMENT, PO YLKA
MORALES, PO HUGO ORTEGA, UC 217,
UC 52, SERGEANT ERIC FRANCIS,

          Defendants.

**MEMORANDUM & ORDER**
17-CV-4323 (ILG) (JO)

GLASSER, Senior United States District Judge:

Plaintiff William Kleinfeldt brings this Section 1983 action against the City of New York and its police officers for the use of excessive force and malicious prosecution. (Compl. ¶¶ 18–43).[1]

Pending before the Court is Defendants' motion for summary judgment. For the reasons stated below, the motion is DENIED.

## BACKGROUND

The following facts are undisputed unless otherwise noted. On April 21, 2015, Defendants conducted a "buy and bust" operation near the public housing building located at 108 Christopher Avenue, Brooklyn, New York.[2] (ECF No. 47 ¶¶ 1–6). An undercover officer ("UC") engaged one

---

[1] Plaintiff has previously withdrawn his federal claims for false arrest and Monell liability, his federal malicious prosecution claim against defendant Morales, and his state law claims for false arrest and excessive force.

[2] A "buy and bust" operation is a law enforcement scheme, wherein an undercover officer engages in narcotic related transactions to purchase drugs and the individual selling the narcotics is subsequently arrested. (ECF No. 38 ¶ 4). Undercover officers that participate in "buy and bust" operations are designated as either the "primary" or the "ghost"; generally, the "primary" officer is the officer trying to purchase the drugs while the "ghost" officer is supposed to monitor the primary officer's actions and relay the observations to the team. (Id. ¶ 5).

Lorna Emaengua to buy crack cocaine for him using pre-recorded money. (*Id.* ¶ 7). Emaengua then entered the building lobby to make the buy. (*Id.* ¶ 22). The undercover officer waited outside and, according to his deposition testimony, observed the lobby through the outer door window. (*Id.* ¶¶ 24–25). He testified that he witnessed a transaction between Plaintiff and Emaengua, which Plaintiff denies. (ECF No. 47 ¶ 28–30). Emaengua then left the lobby and allegedly showed the drugs to the undercover officer. (*Id.* ¶¶ 38–42).

The parties dispute what happened next. The undercover officer testified that Plaintiff and another individual left the lobby, followed him, pushed him, and Plaintiff said "I am going to blow your fucking head off. Where's the fucking money?" (*Id.* ¶¶ 45–48). He also testified that he felt an object which he believed might be a gun "poking and prodding him." (*Id.* ¶¶ 49–50). Plaintiff denies the undercover officer's entire account of that event. (ECF No. 47 ¶¶ 45 –56).

The undercover officer then informed Detectives Ylka Morales and Hugo Ortega, who were waiting nearby in an unmarked police vehicle, that he was the target of an attempted robbery. (*Id.* ¶¶ 56, 60–62).

Detectives Morales and Ortega then approached the lobby where Plaintiff threatened to "spray" them.[3] (*Id.* ¶¶ 61–65). Detective Ortega identified himself as a police officer, punched Plaintiff in the stomach, and forced him to the ground. (*Id.* ¶¶ 80–84). The video recording of that event plainly reveals that Plaintiff had his hands in the air when Detective Ortega punched him. (ECF No. 39 Ex. H, 11:09:35–11:09:40). Plaintiff also testified that Detective Morales then approached him and kicked him twice in the face, which was not captured on the video. (*Id.* ¶ 179).

---

[3] Plaintiff does not dispute that "spray" means to shoot a gun at someone. (*Id.* ¶ 68).

2

Detective Ortega testified that he recovered one bag of marijuana on which Plaintiff was lying. (ECF No. 39 Ex. B, 50:25, 51:1-11, 62:19-22).

Plaintiff was later indicted for Criminal Possession of a Controlled Substance in the Third Degree; Attempted Criminal Sale of a Controlled Substance in the Third Degree; Attempted Criminal Sale of a Controlled Substance in the Fifth Degree;  Attempted Robbery in the First Degree; Attempted Robbery in the Second Degree; Attempted Robbery in the Third Degree; Attempted Petit Larceny; Criminal Possession of a Controlled Substance in the Seventh Degree; Unlawful Possession of Marihuana (violation). (ECF No. 39 Ex. O). On August 28, 2018, all charges were dismissed following the District Attorney's discovery of surveillance video of the incident that cast doubt on the events as described by the police officers. (ECF No. 46 Exs. 9-10).

## LEGAL STANDARD

"A motion for summary judgment must be granted if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255 (1986). "An issue of fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. A fact is material if it might affect the outcome of the suit under the governing law." *Fincher v. Depository Trust & Clearing Corp.*, 604 F.3d 712, 720 (2d Cir. 2010) (citations omitted). "In making this determination, the Court must construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." *Fireman's Fund Ins. Co. v. Great Am. Ins. Co. of New York*, 822 F.3d 620, 631 (2d Cir. 2016) (internal quotation marks omitted).

## DISCUSSION

I. **Excessive Force**

Defendants seek summary judgment on the excessive force claim against Detective Ortega, for punching plaintiff in the stomach. (Def's. Mem. 28–31). A police officer violates the Fourth Amendment "if the amount of force he uses in effectuating an arrest is objectively unreasonable in light of the facts and circumstances confronting the officer." *Lennox v. Miller*, 968 F.3d 150, 155 (2d Cir. 2020) (internal quotation marks and alterations omitted) (citing *Graham v. Connor*, 490 U.S. 386, 397 (1989)).

The video evidence alluded to above could lead a reasonable jury to conclude that the force used by Detective Ortega was unreasonable. Similarly, Detective Ortega's asserted defense of qualified immunity is not available.

Accordingly, Defendants' motion for summary judgment is denied with respect to the excessive force claim against Detective Ortega.

## II. **Malicious Prosecution**

To succeed with a Section 1983 claim for malicious prosecution, Plaintiff must show: "(1) the initiation or continuation of a criminal proceeding against plaintiff; (2) termination of the proceeding in plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for defendant's actions." *Manganiello v. City of New York*, 612 F.3d 149, 160–61 (2d Cir. 2010); *Lanning v. City of Glens Falls*, 908 F.3d 19, 25 (2d Cir. 2018). Each of these elements are addressed below.

Plaintiff has met the initiation element because a criminal proceeding was commenced, and he has met the favorable termination element because the case was later dismissed in a manner not inconsistent with his innocence.

The question of probable cause in this case should be decided by a jury. Any presumption of probable cause generated by the grand jury's indictment is negated because police officers

made multiple statements that have been contradicted by surveillance video of the incident. (*See* ECF No. 46) These discrepancies contributed to the dismissal of Plaintiff's prosecution, in part because they "compromised [the prosecution's] witnesses." (*Id*. at 6). Because malice may be inferred from the lack of probable cause, the final element should be decided by a jury as well.

Accordingly, Defendants motion for summary judgment is denied with respect to Plaintiff's federal and state malicious prosecution claims.

## CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment is **DENIED**.

SO ORDERED.

Dated:   Brooklyn, New York
         March 16, 2021

/s/
I. Leo Glasser                                           U.S.D.J.